Argued January 28, decided February 3, rehearing denied March 10, 1914.

## CHRISTIANSON *v.* TALMAGE.

(138 Pac. 452.)

**Wills—Rights of Legatees and Devisees—Estoppel.**

1. Where a testator leaves to a mother and her two daughters all of his real and personal property, except $50, which he bequeaths to his daughter, the acceptance by his daughter of the sum bequeathed to her from the other legatees does not estop her from asserting the invalidity of the devise to the mother under Section 7335, L. O. L., declaring void any legacy, so far as it concerns any person who attests the will.

**Adverse Possession—Mutual Rights and Liabilities—Adverse Possession.**

2. The possession by an administrator of land devised to his wife and daughters, the devise to his wife being void, because she attested the will, does not become adverse as against an heir of testator, entitled to the share devised to the administrator's wife, till the heir has notice that the cotenants for whom the administrator is acting, including his wife, claim to own the land absolutely.

**Tenancy in Common—Adverse Possession—Evidence—Weight and Sufficiency.**

3. Testimony that the acts giving notice to a cotenant of a claim of adverse title were done about 10 or 12 years ago, the witnesses being unable to state definitely, is not sufficient to sustain the claim of title by adverse possession.

From Lane: LAWRENCE T. HARRIS, Judge.

This is a suit by Hans T. Christianson against C. W. Talmage to quiet title. From a decree in favor of plaintiff, defendant appeals.

REVERSED: REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. George G. Bingham.*

For respondent there was a brief over the name of *Messrs. Williams & Bean,* with an oral argument by *Mr. Louis E. Bean.*

Department 1. MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit to quiet the title to real property. From a decree granting the relief prayed for, the defendant appeals. An examination of a transcript of the evidence discloses that Joseph B. Richardson died intestate in Lane County, having on the preceding day made his last will and testament, wherein he devised and bequeathed to Mary F. Richardson and her daughters, Carrie E. and Edna K., all his real and personal property, except $50, which sum was bequeathed to his daughter and sole heir at law, Susie Talmage. Mrs. Richardson, who was named as a devisee, was one of the two witnesses to the will. No person was designated by the testator as executor, whereupon A. M. Richardson, the husband of Mary F., and the father of Carrie E. and Edna K., upon an *ex parte* application therefor, was on November 30, 1894, appointed administrator with the will annexed. The testator's daughter, on the 22d of the following month, filed in the County Court of that county a petition, alleging that what purported to be such last will was induced by undue influence, and that an inspection of the instrument disclosed that it was not properly witnessed, in consequence of which it

was void. The averments of the petition were controverted and based on the issues thus formed, a trial was had, and the will duly probated in solemn form November 18, 1895, as the last testament of Joseph B. Richardson, deceased. A. M. Richardson was thereupon appointed and qualified as administrator *cum testamento annexo*. An inventory of the decedent's estate was filed, showing the personal property thereof to have been appraised at $6.50. Susie Talmage, on August 1, 1896, received the sum so bequeathed to her, and executed a receipt therefor. Mrs. Richardson testified that the $50 so acknowledged was paid out of her own funds which she had earned by laboring for others, and that she also liquidated the expenses of administering the decedent's estate. Her husband, however, testified that the $50 was secured by mortgaging the claim to obtain the money. She and other members of her family have discharged all the taxes imposed on the land. A. M. Richardson and his family resided on a farm which is situated 1¾ miles from the land the title to which is involved herein. Upon his appointment as personal representative of the decedent's estate he took possession of the real property thereof, cultivated the tilled part, about 5 or 6 acres, cut and burned the brush from about 20 acres more, which latter tract was seeded to grass; and about 10 years prior to the trial herein he fenced about 50 acres of the premises which were used in pasturing cattle and sheep. When the will was made Carrie E. Richardson and her sister, Edna K., were minors; but since that time each has attained her majority, and is now married.

Susie Talmage died intestate August 18, 1908, leaving as her sole heir the defendant, C. W. Talmage.

Mary F. Richardson, and her husband, and their daughters, the devisees, Carrie E. Fowler and Edna

K. Sullivan, and their husbands, on December 5, 1910, executed to the plaintiff, Hans F. Christianson, a warranty deed of the real property in question, which sealed instrument was duly recorded seven days thereafter. No person has ever resided upon the land since the testator died; his estate has never been settled, nor has the administrator been discharged.

A. M. Richardson testified that he took possession of the land for each of the devisees named in the will, and held it for them until the premises were conveyed to the plaintiff. On cross-examination, however, this witness admits that such possession was taken by him, as administrator, pursuant to an order of the court. His son, E. M. Richardson, testified in chief and on cross-examination in the same manner as his father, which acknowledgments were not subsequently denied in any manner.

1. Mary F. Richardson, having witnessed the acknowledgment of the will, could not be a beneficiary thereunder, and as to her the devise is void: Section 7335, L. O. L. The reply herein avers that, by accepting the $50 bequeathed by her father, Susie Talmage and C. W. Talmage, her sole heir at law, are estopped from asserting that Mrs. Richardson took no title under the will. When the will was re-probated the order therefor makes no finding with respect to the title of Mrs. Richardson as to any of the testator's property. The contest seems to have been limited to the question of undue influence, and the court found in effect that the testator, at the time the will was made, was of sound and disposing mind and memory, and that in executing this instrument he was not swayed by any person. The reappointment of the administrator with the will annexed was made by consent of the parties, thereby tacitly admitting that the devise as to Carrie E. Richardson and her sister, Edna

K., was valid, whereby each took an undivided one third of the property; but the will being void as to their mother, the remaining interest which the testator intended to give to her was inherited by his daughter. Mrs. Talmage was entitled under the terms of the will to the bequest of $50, and in accepting that sum, which Carrie E. Richardson and Edna K. were obliged to pay, no estoppel arises.

2. Mrs. Richardson's title to the share of the land, inherited by Mrs. Talmage, if any were obtained, must have been secured by adverse possession taken and held for her by A. M. Richardson at a time when he was also administrator with the will annexed. That possession was held for a sufficient length of time and under a claim of right by Mrs. Richardson is conceded; but, since her husband took and held the possession in a dual capacity and for his daughters, who were tenants in common with Mrs. Talmage, we do not think the possession under such circumstances was sufficient to bar the latter's right of entry, for it will be presumed that his possession was not hostile to that of one of the cotenants, but for her benefit as well as for his daughters' advantage: *Northrop* v. *Marquam,* 16 Or. 173 (18 Pac. 449). The possession of the administrator, who was also holding the land for his daughters, could not become adverse as against Mrs. Talmage until the latter had notice that the cotenants for whom he was acting, including their mother, were claiming to own the land absolutely: *Wheeler* v. *Taylor,* 32 Or. 421 (52 Pac. 183, 67 Am. St. Rep. 540). In *Beers* v. *Sharpe,* 44 Or. 386, 394 (75 Pac. 717, 719), it is said:

"Before possession lawfully taken by a cotenant can become adverse to the parties jointly interested in the property, so as to set in motion the statute of limitations, there must be an actual ouster and notice or

knowledge of the hostile intention in pursuance of which the exclusive possession has been held.''

3. Since no person resided upon the land in question after the death of the testator, the only notice of an adverse claim of ownership that could have been imparted to Mrs. Talmage, if she had viewed the premises, was to have been obtained from the fencing that was put up, and from the brush that was cut and burned. The only testimony with respect to the time when such improvements were made was that given by E. M. Richardson and Carrie E. Fowler. The former's sworn statements upon these matters follow:

"Q. When did you slash the land?
"A. I don't know just exactly what time it was. * *
"Q. How many years ago?
"A. Well, I guess it has been 10 or 12 years ago, anyway.
"Q. You don't remember exactly?
"A. No, sir; I don't remember exactly the year that it was slashed in.''

Mrs. Fowler, in answer to questions, testified as follows:

"Q. How much was slashed upon the railroad land?
"A. I don't really know; about 40 acres, I guess.
"Q. And then later that was fenced, wasn't it?
"A. Yes.
"Q. And you used it for pasture?
"A. Yes.
"Q. Pasture for sheep and cows?
"A. Yes.
"Q. And then that outside of the fence, your father's stock ran upon that, I suppose?
"A. Yes.
"Q. About how long ago was that, if you remember?
"A. About 12 years, I guess; maybe longer.
"Q. You think about 10 or 12 years?
"A. Something like that; I don't just remember.

"Q. You wouldn't attempt to be definite about it?

"A. No, sir."

In our opinion the time thus stated is too indefinite, and, as the right of entry could not have been barred until after 10 years' ouster, the time of such disposition should have been more definitely fixed.

It follows that the decree is reversed and the suit dismissed.

REVERSED: SUIT DISMISSED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.